UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA CAMELO,

     Plaintiff,

                                  Case No. 23-cv-12598

v.                                  Hon. Matthew F. Leitman

PLUESE, BECKER
& SALTZMAN LLC, *et al.*,

     Defendants.

_____/

**ORDER (1) OVERRULING IN PART AND TERMINATING AS MOOT IN PART PLAINTIFF'S OBJECTIONS (ECF No. 38) TO REPORT AND RECOMMENDATION (ECF No. 36); (2) ADOPTING IN PART AND TERMINATING AS MOOT IN PART RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION (ECF No. 36); (3) GRANTING DEFENDANT PLUESE, BECKER & SALTZMAN LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF No. 14) WITHOUT PREJUDICE; (4) GRANTING DEFENDANTS CENLAR CORPORATION FSB'S AND NEW JERSEY HOUSING MORTGAGE FINANCE AGENCY'S MOTION FOR SUMMARY JUDGMENT BASED ON JUDICIAL ESTOPPEL (ECF No. 19); (5) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND (ECF No. 30); (6) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS CENLAR CORPORATION FSB AND NEW JERSEY HOUSING MORTGAGE FINANCE AGENCY (ECF No. 40); AND (7) DENYING PLAINTIFF'S MOTION FOR SANCTIONS (ECF No. 47)**

     In this action, Plaintiff Theresa Camelo alleges that between January of 2020 and July of 2022, Defendants Pluese, Becker & Saltzman LLC ("Pluese Becker"), Cenlar Corporation FSB ("Cenlar"), and the New Jersey Housing Mortgage Finance Agency ("NJHMFA") committed misconduct against her while she was attempting

1

to complete a "workout process" in connection with a default on her mortgage loan payments.   Camelo asserts twenty-four claims against the Defendants in her Complaint and fifteen claims against the Defendants in her Proposed Amended Complaint.

Camelo may not proceed on any of her claims.  She may not pursue her claims against Pluese Becker in this forum because that New Jersey-based law firm is not subject to personal jurisdiction here on her claims.  And her claims against Cenlar and the NJHMFA are barred by the doctrine of judicial estoppel because she did not disclose the claims to the United States Bankruptcy Court for the Eastern District of Michigan when, through counsel, she filed for Chapter 13 bankruptcy well before she filed this action.  On the contrary, she swore under oath to the Bankruptcy Court that she did *not* have any claims to be filed against any entities.

Accordingly, for the reasons explained in more detail below, the Court will (1) dismiss Camelo's claims against Pluese Becker without prejudice for lack of personal jurisdiction and (2) enter summary judgment in favor of Cenlar and the NJHMFA on the basis of judicial estoppel.  The Court will also deny Camelo's pending motions to amend her Complaint, for summary judgment, and for sanctions because, in light of the fact that her claims fail for the reasons states above, she is not entitled to any of the affirmative relief she seeks.

# I[1]

## A

On July 13, 2012, Camelo borrowed money from the NJHMFA to purchase a home in New Jersey and granted the NJHMFA a mortgage on the property. (*See In re: Camelo,* (E.D. Mich. Bankr. Case No. 22-48459) at Dkt. #15, p. 15. *See also* Mortgage Note, ECF No. 19, PageID.143-145.)   It appears that the servicer for Camelo's loan and mortgage was Cenlar. (*See* Compl., ECF No. 1, PageID.2.)

At some point in 2020, Camelo fell behind on her mortgage payments. (*See* Proposed Am. Compl., ECF No. 30, PageID.292.[2])  She then "reache[d] out" to the

---

[1] This is an unusual case that requires the Court to refer to documents and record evidence in both this Court's docket and the docket of the United States Bankruptcy Court for the Eastern District of Michigan.  For ease of reference, citations using the identifier "ECF No." refer to documents and evidence in the docket in this civil action.  Citations using the identifier "Dkt. #" refer to documents and evidence in the Bankruptcy Court docket.

[2] On February 22, 2024, Camelo filed what she titled an "Amended Complaint" in this action. (Proposed Am. Compl., ECF No. 30.)   Because Camelo filed the Amended Complaint more than twenty-one days after Pluese Becker sought dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Magistrate Judge properly construed her Amended Complaint as a motion for leave to amend. (*See* Order, ECF No. 31; *see also* Fed.R.Civ.P. 15(a)(1)(B).)   The Magistrate Judge later recommended denying Camelo leave to amend. (*See* Report and Recommendation, ECF No. 36.)  The Court agrees with the Magistrate Judge that Camelo's motion for leave to amend should be denied, and it will **DENY** the motion.  However, for purposes of resolving Defendants' pending motions, the Court will consider and credit the additional factual allegations Camelo made in that pleading.  Even with the proposed additional allegations, Camelo may not proceed with her claims for the reasons explained below.

NJHMFA and Cenlar in "pursuit of a loan workout." (*Id.*)  Camelo claims that instead of working in good faith towards a loan modification, Defendants commenced a bad faith course of conduct including demanding additional documentation, more payments, and instituting a foreclosure action against her. (*See id.*, PageID.293.)

During this period of time, Camelo relocated to Michigan. (*See id.*)  She alleges that after she moved to Michigan, the Defendants continued to send her – by mail and wire – misleading communications that were part of their alleged scheme to cheat her out of both money and her residence. (*See, e.g.*, *id.*, PageID.299-300.)  Camelo contends that the Defendants' misconduct lasted until "July of 2022." (Resp. to Show Cause Order, ECF No. 45, PageID.638.)  Notably, Camelo repeatedly alleges that Pluese Becker's role in the alleged scheme was to "provide support … in the State of New Jersey." (Proposed Am. Compl., ECF No. 30, PageID.302-303.)

## B

According to Camelo, the Defendants' misconduct "force[d]" her to file for bankruptcy protection under Chapter 13 of the Bankruptcy Code. (*Id.*, PageID.294.)  She filed her bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan, through retained attorney Peter Behrmann, on October 28, 2022. (*See In re: Camelo*, (E.D. Mich. Bankr. Case No. 22-48459) at Dkt. #1.)

4

Two weeks after filing her bankruptcy petition, on November 11, 2022, Camelo filed bankruptcy schedules with the Bankruptcy Court. (*See id.* at Dkt. #15.) One of those schedules directed her to identify all "[c]laims against third parties, whether or not you have filed a lawsuit or made demand for payment." (*Id.*, p. 7.) Camelo indicated that she had "[n]o" such claims against anyone or any entity – including the Defendants in this action. (*Id.*) And she did so "[u]nder penalty of perjury." (*Id.*, p. 38.)

While she did not disclose to the Bankruptcy Court any claims that she had against the Defendants in this action, she did identify two of them as creditors to whom she owed money. More specifically, in her petition, Camelo filed a list of creditors that included Cenlar (listed in her petition as "Central Loan") and Pluese Becker. (*Id.* at Dkt. #1, pp. 11-12.) In her schedules, she again identified Cenlar (listed again as "Central Loan") as a creditor with a claim for $241,042.00 against her home located in New Jersey. (*Id.* at Dkt. #15, p. 15.) She also listed Pluese Becker as one "to be Notified for a Debt That You Already Listed." (*Id.*, p. 16.)

After Camelo identified Cenlar and Pluese Becker as two of her creditors, Cenlar filed a Proof of Claim in her bankruptcy proceedings.[3] (*Id.* at Claim 7-1.) Camelo did not object to that Proof of Claim nor did she suggest to the Bankruptcy

---

[3] In the Proof of Claim, Cenlar listed the NJHMFA as the current creditor.

Court that Cenlar or Pluese Becker (or the NJHMFA) had committed any misconduct of any kind against her.

On January 21, 2023, the Bankruptcy Court entered an order confirming Camelo's Chapter 13 Plan. (*See id.* at Dkt. #21.)  Prior to that time, Camelo had not disclosed to the Bankruptcy Court that she had any claims against any of the Defendants in this action.  And Camelo still has not made such a disclosure to the Bankruptcy Court. (*See generally In re: Camelo*, (E.D. Mich. Bankr. Case No. 22-48459).)

## C

Nearly nine months after the Bankruptcy Court confirmed her Chapter 13 Plan, Camelo filed this action.  In her Complaint, she alleged that she fell behind on her payments around the time that the COVID-19 pandemic began and that she reached out to Cenlar and the NJHMFA "in an effort to catch up with the missed payment." (Compl., ECF No. 1, PageID.2.)  She claims that Defendants then "embarked on a campaign of Bad Faith, delay and misinformation, in order to unjustly profit[.]" (*Id.*)  That "campaign" included, among other things, making repeated requests for already-supplied documentation and instituting a foreclosure action against her. (*Id.*)  Camelo's Complaint asserted twenty-four claims against the Defendants, including claims for breach of contract, violations of the Real Estate

6

Settlement Procedures Act ("RESPA"), and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*See* Compl., ECF No. 1.)

## D

All of the Defendants filed motions seeking dismissal of Camelo's claims. First, Pluese Becker filed a motion to dismiss for lack of personal jurisdiction. (*See* Pluese Becker Mot., ECF No. 14.)  In support of that motion, Pluese Becker explained it had been retained by Cenlar and the NJHMFA to file a foreclosure action against Camelo in a New Jersey court, that it had filed that action in New Jersey, and that it had not engaged in the practice of law in Michigan. (*See id.*, PageID.62-63.)  Pluese Becker supported its motion with a declaration in which Robert Saltzman, co-Managing member of Pluese Becker, attested that Pluese Becker is incorporated and located in New Jersey, does not market its services outside the state of New Jersey, does not accept matters outside the state of New Jersey, has no clients outside the state of New Jersey, and that none of its attorneys are members of the Michigan Bar. (*See* Saltzman Decl., ECF No. 14, PageID.88-91.)  Saltzman added that Pluese Becker "has no connection to the State of Michigan." (*See id.* PageID.90.)

Second, Cenlar and the NJHMFA filed a motion to dismiss, or in the alternative, motion for summary judgment. (*See* Cenlar/NJHMFA Mot., ECF No. 19.)  In that motion, Cenlar and the NJHMFA argued that they are entitled to

judgment as a matter of law on the basis of judicial estoppel and *res judicata*, and on the basis that Camelo failed to plead her claims with sufficient particularity. (*See id.*)

On February 22, 2024, Camelo filed what she called an "Answer to Defendant's Motion to Dismiss." (*See* Answer to Mot., ECF No. 29.)  In that filing, Camelo responded only to arguments made by Cenlar and the NJHMFA; she did not offer any response to Pluese Becker's contentions that the Court lacked personal jurisdiction over the firm. (*See id.*)  Instead of responding to Pluese Becker's arguments, Camelo filed an Amended Complaint in which she added allegations that appear to be aimed at establishing that Pluese Becker is subject to personal jurisdiction in this forum. (*See* Proposed Am. Compl., ECF No. 30.)  The Amended Complaint asserts fifteen claims against Defendants. (*See id.*)

The Defendants' motions were referred to the assigned Magistrate Judge, and on May 30, 2024, she issued a Report and Recommendation resolving the motions (the "R&R"). (*See* R&R, ECF No. 36.)  She first recommended that the Court grant Pluese Becker's motion on the basis that the allegations in Camelo's original Complaint and Amended Complaint, even when taken together, are insufficient to establish that Pluese Becker is subject to personal jurisdiction in this forum. (*See id.*, PageID.556-559, 566.)  The Magistrate Judge next recommended that the Court dismiss Camelo's claims against Cenlar and the NJHMFA on the basis that the

allegations in Camelo's original Complaint and proposed Amended Complaint failed to state claims against those Defendants on which relief could be granted. (*See id.*, PageID.562-566.)  The Magistrate Judge did not reach the question of whether Camelo's claims are barred by the doctrine of judicial estoppel. (*See id.*)

### E

On June 20, 2024, Camelo filed objections to the R&R (*see* Obj., ECF No. 38), and on July 2, 2024, Cenlar and the NJHMFA filed a response to Camelo's objections. (*See* Resp., ECF No. 39.)   Pluese Becker did not respond to the objections.

The Court thereafter undertook a comprehensive review of this action.  The Court reviewed, among other things, Camelo's original Complaint and proposed Amended Complaint, the pending motions, the R&R, Camelo's objections, and the response to those objections that Cenlar and the NJHMFA had filed.

After conducting that review, the Court came to the preliminary conclusion that, as Cenlar and the NJHMFA had argued in their dispositive motion, all of Camelo's claims were barred by judicial estoppel because Camelo should have, but did not, disclose the claims to the Bankruptcy Court.  But before entering judgment against Camelo on that basis, the Court wanted to ensure that Camelo had a full opportunity to address the judicial estoppel issue.  Accordingly, on July 25, 2024, the Court entered an order directing Camelo to show cause in writing why the Court

should not enter summary judgment against her on all of her claims against all Defendants on the basis of judicial estoppel. (*See* Order, ECF No. 42.)  Camelo thereafter submitted a supplemental brief addressing the judicial estoppel issue. (*See* Resp., ECF No. 45.)  Cenlar and the NJHMFA responded. (*See* Resp., ECF No. 46.)

The Court is now prepared to rule on the pending motions and Camelo's objections to the R&R.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions de novo. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III

While the Court's review up until this point has been primarily focused on the issue of judicial estoppel, the Court must start with Pluese Becker's motion to dismiss for lack of personal jurisdiction and Camelo's objection to the recommendation in the R&R that the Court grant that motion.  The Court must start there because if, as Pluese Becker claims, it is not subject to personal jurisdiction in this forum, then the Court may not reach the merits of Camelo's claims against Pluese Becker.  For the reasons explained below, the Court agrees with the

Magistrate Judge that Camelo has failed to show that Pluese Becker is subject to personal jurisdiction in this forum. The Court will therefore **OVERRULE** Camelo's objection to the recommendation that the Court dismiss the claims against Pluese Becker for lack of personal jurisdiction, and the Court will **DISMISS** those claims without prejudice on that basis.

## A

As noted above, in the R&R, the Magistrate Judge concluded that Camelo had failed to establish that Pluese Becker was subject to personal jurisdiction in this Court. (*See* R&R, ECF No. 36, PageID.556-559, 566.) The Magistrate Judge explained, among other things, that:

> "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (cleaned up). The Sixth Circuit has held that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Children's Legal Servs., PLLC v. Shor Levin & Derita, PC*, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012) (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)). "The Michigan Supreme Court has construed Michigan's Long–Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process."

\*\*\*

In order to make a successful prima facie showing of personal jurisdiction, Camelo needed to demonstrate that the following three factors were met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

Pluese Becker is a New Jersey law firm with no ties to Michigan. Its alleged actions relate solely to a mortgage of a New Jersey home and subsequent foreclosure proceedings related to that mortgage. In other words, the cause of action arises from Pluese Becker's alleged activities in New Jersey, not Michigan. Finally, given that Pluese Becker's alleged acts have no connection with Michigan, it would not be reasonable to exercise personal jurisdiction over it. Accordingly, Camelo has not established a prima face showing of personal jurisdiction as to Pluese Becker by a preponderance of the evidence.

(*Id.*, PageID.557-558.)

The Magistrate Judge also agreed with Pluese Becker that Camelo could not

use her RICO claim to establish personal jurisdiction over the firm:

> Pluese Becker also argues that Camelo's RICO claims cannot be used as a means to exercise personal jurisdiction over it. "When a plaintiff brings a civil RICO action in a

12

> district court where personal jurisdiction can be established over at least one defendant, nationwide summonses can be served on other defendants if required by the ends of justice." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 440 (6th Cir. 2022).
>
> "There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first preference, as set forth in § 1965(a) [of the RICO statute], is to bring the action where suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora." *Id.* (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2Cir. 1998)).
>
> This case involves a mortgage on a New Jersey home, subsequent attempts to modify that mortgage, and a related foreclosure action. As such, this lawsuit would be expected to be brought in New Jersey. Therefore, the ends of justice do not require this Court to exercise personal jurisdiction over Pluese Becker, regardless of whether it has personal jurisdiction over NJHMFA or Cenlar.

(R&R, ECF No. 36, PageID.558-559.)

Finally, the Magistrate Judge concluded that none of the additional allegations in Camelo's proposed Amended Complaint "provide[d] facts supporting the Court's exercise of personal jurisdiction over Pluese Becker." (*Id.*, PageID.566.)   The Magistrate Judge therefore recommended that the Court dismiss the claims against Pluese Becker without prejudice. (*See id.*)

**B**

Camelo objects to the Magistrate Judge's recommendation on several grounds.  None persuade the Court that the Magistrate Judge erred when she concluded that Camelo failed to show that Pluese Becker is subject to personal jurisdiction in this forum.

**1**

Camelo's primary objection seems to be that Pluese Becker is subject to personal jurisdiction in this forum pursuant to the criminal mail fraud statute, 18 U.S.C. § 1341 "and related precedent." (Obj., ECF No. 38, PageID.575.)  Camelo insists that the statute and the cases she cites involving the statute "establish[] [her] right to file in the state where [Pluese Becker] caused mail to be delivered in furtherance of their scheme to defraud [her], specifically the State of Michigan." (*Id.*)  The Court overrules this objection for several reasons.  First, Camelo never presented this argument to the Magistrate Judge.  As noted above, she did not file a brief or legal memorandum before the Magistrate Judge responding to the arguments in Pluese Becker's motion to dismiss.  The Court declines to reject the recommendation based upon an argument that was not presented to the Magistrate Judge. *See*, *e.g.*, *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that "The Magistrate Judge Act . . . does not allow parties to raise at the district court stage new arguments or issues that were not presented to the

magistrate" absent "compelling reasons," and holding that party had "waive[d]" claim not presented to Magistrate Judge); *Steele v. Jenkins*, No. 17-4171, 2018 WL 2144073, at *4 (6th Cir. Mar. 5, 2018) (same).

Second, neither the mail fraud statute Camelo cites nor the cases she cites address matters of personal jurisdiction in a civil action.  Thus, Camelo has not cited any legal authority supporting her argument that Pluese Becker is subject to personal jurisdiction here because it allegedly committed mail fraud.  That is an additional basis on which to overrule the objection.

Third (and in any event), as the Magistrate Judge concluded, Camelo has not sufficiently alleged any claims against Pluese Becker involving mail fraud.  The mail fraud allegations are included in Camelo's RICO claims, but, for the reasons explained by the Magistrate Judge, Camelo failed to plead those fraud-based claims with sufficient particularity. (*See* R&R, ECF No. 36, PageID.564.)  Instead, she engaged in impermissible group pleading. (*See id*.)

Finally, Camelo has not sufficiently alleged or shown that Pluese Becker mailed, or caused to be mailed, any correspondence as part of a mail fraud scheme. She does not identify any particular mailing by Pluese Becker in her Complaint or proposed Amended Complaint.  The sole evidence she provides of a mailing by Pluese Becker is a copy of the front of an envelope allegedly sent to her in Michigan. (*See* Obj., ECF No. 38, PageID.584.)  But she offers no proof as to what was in the

15

envelope, nor does she provide any evidence concerning the circumstances under which the envelope was sent to her. Likewise, she does not sufficiently allege or provide evidence that Pluese Becker caused any of the other Defendants to send her correspondence in Michigan.

For all of these reasons, the Court rejects Camelo's contention that the Magistrate Judge erred when she declined to find that Pluese Becker is subject to personal jurisdiction in this forum based upon a mail fraud theory.

**2**

Camelo also seems to suggest that the Magistrate Judge erred in failing to recognize that Pluese Becker is subject to personal jurisdiction in this forum because it engaged in a "joint scheme" with other Defendants who, in Camelo's view, had substantial contacts with the State of Michigan. (*See* Obj., ECF No. 38, PageID.575-576.) But, as with her first objection, she did not present this argument to the Magistrate Judge (because she did not respond to Pluese Becker's motion to dismiss). In any event, she cites no legal authority for her contention that an alleged conspirator is subject to personal jurisdiction in a forum based on an alleged co-conspirator's contacts with the forum. Absent such authority, the Court declines to adopt Camelo's conspiracy-based theory of personal jurisdiction. Indeed, it would be especially inappropriate to adopt that theory absent supporting authority and argument by Camelo because "the Sixth Circuit has neither adopted nor rejected a

'conspiracy' theory of personal jurisdiction, district courts within the Sixth Circuit have split on the question," *DayCab Co., Inc. v. Prairie Tech., LLC*, No. 3:20-cv-63, 2021 WL 6275629, * 5 (E.D. Tenn. Aug. 13. 2021), and several judges on this Court have declined to adopt the theory. *See, e.g.*, *Singh v. Daimler, AG*, 902 F.Supp.2d 974, 981 (E.D. Mich. 2012) ("This Court declines to find personal jurisdiction ... based on a conspiracy theory because the Sixth Circuit has not adopted this theory of personal jurisdiction."); *Akbar v. Bangash*, No. 15-cv-12688, 2017 WL 4334912, at *5, n. 7 (E.D. Mich. July 11, 2017) (explaining that "personal jurisdiction would not lie on the basis of their asserted conspiracy theory."); *In re Auto. Parts Antitrust Litig.*, No. 2:12-cv-00500, 2014 WL 2999271, at *6 (E.D. Mich. July 3, 2014) (declining to recognize conspiracy theory of personal jurisdiction).

For all of these reasons, Camelo has failed to convince the Court that the Magistrate Judge erred in recommending dismissal of the claims against Pluese Becker for lack of personal jurisdiction.

## C

In addition to reviewing Camelo's objections, the Court has conducted its own analysis as to how the three elements from the Sixth Circuit's test for personal jurisdiction apply to Camelo's claims against Pluese Becker.  The Court sets forth

its analysis below. The analysis confirms that Pluese Becker is not subject to personal jurisdiction in this forum.

## 1

First, there is no indication that Pluese Becker purposefully availed itself of the privilege of doing business in Michigan. The Sixth Circuit has explained the contours of purposeful availment as follows:

> "Purposeful availment" is "the constitutional touchstone of personal jurisdiction," and it exists "where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State ... and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Neogen*, 282 F.3d at 889 (citations and quotation marks omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, ... or of the unilateral activity of another party or a third person[.]" *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (citations and quotation marks omitted). Thus, a nonresident who deliberately engages in "significant activities within a State" or creates "continuing obligations between himself and residents of the forum" satisfies this requirement. *Id.* at 475–76, 105 S.Ct. 2174 (citations and quotation marks omitted).

*AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016).

When applying these standards, the Court cannot find that Pluese Becker engaged in purposeful availment here. Pluese Becker is a New Jersey law firm that handled a foreclosure action against Camelo in a New Jersey court in connection

18

with a mortgage on New Jersey real property.  Indeed, Camelo herself *repeatedly* alleges Pluese Becker committed its allegedly wrongful conduct "*in the State of New Jersey.*" (Proposed Am. Compl., ECF No. 30, PageID.301-303 (emphasis added).) And she has not identified any meaningful connection between Pluese Becker and Michigan.

While Camelo does allege that the "Defendants" – plural – sent her mail and wire communications in Michigan (*see, e.g.*, Am. Compl., PageID.300), those "group pleading" allegations are insufficient to establish that Pluese Becker is subject to personal jurisdiction here.  "Each defendant's contacts with the forum State must be assessed *individually*." *Keeton v. Hustler Mag.*, 465 U.S. 770, 781 n. 13 (1984) (emphasis added).  Thus, "[t]o allege personal jurisdiction over a defendant, group pleading is not permitted." *In Re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F.Supp.3d 111, 135 (S.D.N.Y. 2021).

Finally, contrary to Camelo's suggestion, the exhibits attached to her objections do not show that Pluese Becker sent substantial communications to Michigan.  As noted above, only one page of the exhibits references Pluese Becker, and that one page is a copy of the front of an envelope purportedly mailed from Pluese Becker to Camelo in Michigan. (*See* Obj., ECF No. 38, PageID.584.)  Camelo offers no indication or explanation as to what was inside of the envelope.

Under all of these circumstances, Camelo has neither sufficiently alleged nor shown that Pluese Becker "deliberately engage[d] in 'significant activities within'" Michigan or "create[d] 'continuing obligations between [itself] and residents of [Michigan].'"[4] *AlixPartners*, 836 F.3d at 550 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (2016)).  On the contrary, any limited connections between Pluese Becker and Michigan were fortuitous and occurred only because Camelo happened to relocate here.

## 2

Second, Camelo has not shown that her causes of action against Pluese Becker arise out of the firm's contacts with Michigan.  As to this element of the test for personal jurisdiction, the Sixth Circuit has explained:

> "We have articulated the standard for [determining whether a cause of action arises from the defendant's contacts with the forum]  in a number of different ways, such as whether the causes of action were made possible by or lie in the wake of the defendant's contacts, or whether the causes of action are related to or connected with the defendant's contacts with the forum state[.]" *Air Prods.*, 503 F.3d at 553 (citations and internal quotation marks omitted). It is clear, however, that this is a "'lenient standard'" and "the cause of action need not 'formally' arise from defendant's contacts." *Id.* (quoting *Bird*, 289

---

[4] Camelo appears to allege in her proposed Amended Complaint that Pluese Becker – singular – conducted "illegal activities" both "in and across state lines, including but not limited to New Jersey and Michigan." (Proposed Am. Compl., ECF No. 30, PageID.302.)  This vague allegation is not sufficient to establish that Pluese Becker committed any acts in Michigan or directed any improper communications toward Camelo here.

> F.3d at 875). At a minimum, this factor is satisfied if "'the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities.'" *Bird*, 289 F.3d at 875 (quoting *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)).

*AlixPartners*, 836 F.3d at 552.  Here, Camelo has not shown that her claims have a substantial connection to Michigan because, as described above, she has not demonstrated that Pluese Becker undertook any meaningful activity in, or directed toward, Michigan.

### 3

Third, asserting personal jurisdiction over Pluese Becker in this forum would not be reasonable.  With respect to this final component of the test for personal jurisdiction, the Sixth Circuit has explained:

> The final requirement is "whether exercising personal jurisdiction over [Brewington] would be reasonable, i.e., whether it would comport with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68 (citations and internal quotation marks omitted). Where, as here, "the first two criteria are met ... only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (citations and quotation marks omitted). In analyzing this requirement, we consider a number of factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prods.*, 503 F.3d at 554–55 (citation omitted).

*Id.* Under this standard, requiring Pluese Becker to defend against Camelo's claims in this forum would be unreasonable for several reasons. The burden on Pluese Becker of litigating here would be substantial. Moreover, the State of New Jersey has a significant interest in resolving Camelo's claims – that a New Jersey-based law firm committed misconduct in New Jersey in connection with a mortgage on real property located in New Jersey. Litigating Camelo's New Jersey-centered claims in New Jersey would also be the most efficient way of resolving the claims. Under these circumstances, New Jersey is the only reasonable forum for Camelo's claims against Pluese Becker.

### D

For all of these reasons, the Court **OVERRULES** Camelo's objections to the R&R, **ADOPTS** the recommended disposition of the R&R with respect to Camelo's claims against Pluese Becker, and **DISMISSES** Camelo's claims against Pluese Becker without prejudice for lack of personal jurisdiction.

### IV

The Court now turns to whether Cenlar and the NJHMFA are entitled to summary judgment based upon their judicial estoppel defense. Although the Magistrate Judge did not address this defense in the R&R, Cenlar and the NJHMFA raised the defense in their motion, and the Court offered Camelo an opportunity – which she accepted – to address the defense. Under these circumstances, the Court

deems it appropriate to address the defense.  For the reasons explained below, the

Court concludes that Cenlar and the NJHMFA are entitled to summary judgment on

the basis of judicial estoppel.[5]

In *Stanley v. FCA US, LLC*, 51 F.4th 215 (6th Cir. 2022), the Sixth Circuit

explained the nature of judicial estoppel and explained how the doctrine applies

where, as in this case, the claimed estoppel arises from a position that the plaintiff

took in a prior bankruptcy case:

> Judicial estoppel is a discretionary equitable doctrine. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). It "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749, 121 S.Ct. 1808 (citation omitted). In doing so, the doctrine "preserve[s] 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776).
>
> When a separate bankruptcy proceeding is involved, judicial estoppel bars an undisclosed suit when: "(1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence."

---

[5] In the preceding section of this order, the Court concluded that Pluese Becker is not subject to personal jurisdiction in this forum and that Camelo's claims against Pluese Becker must therefore be dismissed without prejudice.  If Pluese Becker was subject to personal jurisdiction here, it could invoke the judicial estoppel defense to the same extent as Cenlar and the NJHMFA.

> *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314
> (6th Cir. 2013) (citing *White*, 617 F.3d at 478).

*Stanley*, 51 F.4th at 218–19.

The first two elements of the judicial estoppel analysis are clearly satisfied here – and Camelo does not claim otherwise. First, Camelo has taken a position in this action that is directly contrary to the one she took under oath in her bankruptcy action. Indeed, she is asserting in this action claims that she told the Bankruptcy Court she did not have. *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010) (finding that omitting a harassment claim in bankruptcy findings and later filing suit on the harassment claim constituted a position contrary for purposes of judicial estoppel). Second, the Bankruptcy Court adopted her contrary position when it entered an order confirming her bankruptcy plan. *See Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) ("[W]hen a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position.").

With respect to the third element – whether non-disclosure of the claim in the prior bankruptcy proceeding was the result of mistake or inadvertence – "courts consider whether: (1) the debtor had knowledge of the facts underlying the undisclosed claims; (2) the debtor had motive to conceal the undisclosed claims; and

(3) the omission was made in bad faith." *Stanley*, 51 F.4th at 219.  All of these factors weigh in favor of the conclusion that Camelo's failure to disclose her claims against Cenlar and the NJHMFA to the Bankruptcy Court did not result from mistake or inadvertence and, thus, that she should be estopped from asserting the claims here.

To begin, "it is clear that [Camelo] had knowledge of the facts underlying the undisclosed claims." *Id.*  The claims are based on alleged acts that were directed towards Camelo, and which allegedly affected Camelo, in the two years leading up to her bankruptcy filing.  She was aware of both the acts and their effect on her when she filed her bankruptcy schedules.  She does not claim otherwise.

Next, Camelo had a motive to conceal her claims from the Bankruptcy Court.  Indeed, "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Id.* (quoting *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 426 (6th Cir. 2005)).  And that was the case here.  Camelo appears to suggest that her claims against Defendants may be worth as much as $5,000,000.00. (*See* Compl., ECF No. 1, PageID.2 – appearing to allege damages in a sum certain for purposes of a possible default judgment).  She had a strong motive to hide from the Bankruptcy Court an asset she regarded as that valuable because disclosure of the asset could have had a material impact on the adjudication of her bankruptcy proceedings. *See Stanley*, 51 F.4th at 219-20 (finding motive to conceal even where, as here, the plan provided for 100% repayment to creditors).

Finally, the Court turns to whether Camelo acted in bad faith when she failed to disclose her claims to the Bankruptcy Court.  It is Camelo's "burden to provide evidence showing an absence of bad faith."  *Id.* at 220.  She has failed to do so.

Camelo says that she did not act in bad faith because she disclosed the existence of her bankruptcy proceedings to *this Court* when she filed *this action*. (*See* Resp. to Show Cause Order, ECF No. 45, PageID.646.)  This argument appears to rest upon a misunderstanding of which disclosure is relevant for purposes of a judicial estoppel defense arising out of prior bankruptcy proceedings.  As explained above, the focus of that defense is on whether a plaintiff asserting a claim in a post-bankruptcy civil action disclosed the claim *to the bankruptcy court* because it is that court (and the creditors in the proceedings before that court) that was misled by, and acted in reliance upon, the non-disclosure.  Camelo's disclosure of the bankruptcy proceedings to this Court is simply not relevant to Defendants' judicial estoppel defense.

Moreover, the timing of Camelo's disclosures to this Court came too late.  As noted above, she filed this action more than six months *after* the Bankruptcy Court confirmed her bankruptcy plan.  Thus, her purported "disclosure" by filing this action could not have been considered by the Bankrutpcy Court and creditors at the relevant point in her bankruptcy proceedings.  And to this day, Camelo has still failed to make the relevant disclosure to the Bankruptcy Court.  Camelo's late

"disclosures" to the wrong court – especially when coupled with her failure to ever make disclosure to the correct court – do not establish a lack of bad faith.

Camelo also says that she did not act in bad faith when she failed to disclose her claims to the Bankruptcy Court because at the time she filed her bankruptcy schedules, she was not aware that she had a legal right to sue Defendants. (*See* Resp. to Show Cause Order, ECF No. 45, PageID.649.)  She says that she learned that she may have a claim only "after months of lengthy painstaking research." (*Id.*)  But *Stanley* makes clear that ignorance of the law is generally not sufficient to establish a lack of bad faith in the judicial estoppel context – especially where, as here, the party to be estopped was represented by counsel in the prior bankruptcy proceedings. *See Stanley*, 51 F.4th at 220 (agreeing with district court that plaintiff failed to show a lack of bad faith based upon his contention that his lack of legal knowledge caused his failure to disclose claim to bankruptcy court).  Moreover, even if, as Camelo claims, she did not realize when she filed for bankruptcy protection that she had affirmative legal claims against Defendants, she surely had concluded by that time that Defendants had mistreated her for over two years.  Yet, she said nothing in the bankruptcy proceedings when Cenlar (listing the NJHMFA as the creditor) submitted a claim for payment from the bankruptcy estate.  And she, herself, even listed Cenlar and Pluese Becker as potential claimants in her petition.  Thus, it is not as if Defendants were not on Camelo's "radar screen" during her bankruptcy

proceedings – and during her consultations with her lawyer during those proceedings. Under all of these circumstances, Camelo should have raised any claims and/or concerns about the Defendants' alleged misconduct during her bankruptcy proceedings, and the Court discerns no reasonable excuse for the failure of Camelo and her counsel to have done so.

In sum, the Court finds that the elements of judicial estoppel are met here and that Camelo's nondisclosure of her cause of action to the Bankruptcy Court therefore bars her claims against Cenlar and NJHFMA.[6]

IV

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

1. Camelo's objections to the R&R (ECF No. 38) are **OVERRULED** to the extent she objects to the recommendations that the Court grant Pluese Becker's motion to dismiss for lack of personal jurisdiction and deny her motion to amend her Complaint. The objections are **TERMINATED AS MOOT** to the extent they address the recommendation that the Court

---

[6] Because the Court is granting summary judgment in favor of Cenlar and the NJHFMA on the basis of judicial estoppel, which was not the basis of the recommendation in the R&R, the Court need not address Camelo's objections to the Magistrate Judge's recommendation in the R&R to grant Cenlar and NJHFMA's motion on the basis that Camelo failed to state a claim against them. Those objections are therefore **TERMINATED AS MOOT**.

dismiss the claims against Cenlar and NJHFMA for failure to state a claim. The objections are moot as to that recommendation because the Court is resolving the claims against Cenlar and the NJHFMA on a different basis not addressed in the R&R (judicial estoppel).

2. The recommendation of the R&R (ECF No. 36) that the Court dismiss the claims against Pluese Becker for lack of personal jurisdiction is **ADOPTED**, Pluese Becker's motion to dismiss (ECF No. 14) is **GRANTED**, and all of Camelo's claims against Pluese Becker are **DISMISSED WITHOUT PREJUDICE**. In addition, the recommendation of the R&R that the Court deny Camelo's motion to amend her Complaint (ECF No. 30) is **ADOPTED** and Camelo's motion to amend is **DENIED**. The remainder of the disposition recommended in the R&R is **TERMINATED AS MOOT** because the Court is resolving the remaining claims on a basis not addressed in the R&R.

3. The motion for summary judgment based on judicial estoppel by Cenlar and the NJHMFA (ECF No. 19) is **GRANTED**, and on that basis judgment shall enter in favor of those Defendants and against Camelo on all of the claims Camelo has brought against them in this action.

4. The motion for summary judgment by Camelo against Cenlar and the NJHMFA (ECF No. 40) overris **DENIED** in light of the Court's ruling

29

that Camelo's claims against Cenlar and NJHMFA are barred by judicial estoppel.

5. The motion for sanctions by Camelo against all Defendants (ECF No. 47) is **DENIED** because the Court is not persuaded that Camelo is entitled to the relief she seeks in that motion.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 26, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126